```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
VINCENT O. EZEIRUAKU,                                             :
                                                                  :
                           Plaintiff,                             :
                                                                  :         20-cv-4004 (LJL)
          -v-                                                     :
                                                                  :         MEMORANDUM & ORDER
AMERICAN EXPRESS COMPANY,                                         :
                                                                  :
                           Defendant.                             :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/19/2020

LEWIS J. LIMAN, United States District Judge:

*Pro se* Plaintiff Vincent O. Ezeiruaku initiated this action against Defendant American Express Company ("American Express") by complaint on May 22, 2020. Dkt. No. 2 ("Complaint" or "Compl."). The Complaint alleges that on July 16, 2019, Plaintiff, who has been an American Express cardholder for over 35 years, purchased four airline tickets for a December 20, 2019 trip to Lagos, Nigeria for $1,808.65 each. Compl. ¶¶ 3-5. The next day, Plaintiff requested a refund of these tickets, but when he reviewed his American Express bank statement, he discovered that he had not received the refund. *Id.* ¶ 7. In addition, American Express charged him for over twenty identical tickets issued to his daughter for the same December 20, 2019 trip and in the same amount of $1,808.65.[1] Plaintiff alleges that, beginning in August 2019, he contacted American Express to have the error corrected for months, but American Express failed to do so. *Id.* ¶¶ 10-11. He states that he severed his ties with

---

[1] The Complaint states that Plaintiff was charged for an additional 29 tickets issued in his daughter's name, but the amended motion for default judgment states that an additional 21 tickets were charged in his daughter's name—20 tickets for $1,808.65 each and one ticket for $1,750.65. *Compare* Compl. ¶ 8, *with* Dkt. No. 14 at 2. The bank statement submitted by Plaintiff is consistent with the motion for default judgment. *See* Dkt. No. 14.

Defendant in April 2020. *Id.* ¶ 13. Plaintiff brings claims for breach of contract, fraud, and violation of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, and he seeks $52,000 in actual damages with interest and $500,000 in punitive damages.

After Defendant American Express failed to appear or otherwise respond to the Complaint despite being served on June 29, 2020 by a process server, *see* Dkt. No. 6, Plaintiff filed a motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2), Dkt. No. 12. The Court held a conference on August 28, 2020—at which Defendant did not appear—and instructed Plaintiff to submit evidence in support of his claim for liability and damages. Plaintiff filed an amended motion for default judgment on September 4, 2020. Dkt. No. 14. In that amended motion, Plaintiff submitted a redacted copy of his bank statement showing the four airline tickets charged on July 16, 2019 at $1,808.65 each and the additional 20 identical tickets charged on July 16, 2019 in his daughter's name at $1,808.65 each. The bank statement, dated July 26, 2019, shows that Plaintiff initiated an investigation with Defendant American Express in connection with the 20 tickets. *See* Dkt. No. 14 at 5 ("Your billing inquiry is under investigation. No payment on the amount under review of $36,173.00 is required at this time."). In that same motion, Plaintiff also asks for compensatory damages in connection with seven tickets charged on July 17, 2019, annotated with checkmarks on the bank statement. Each of these tickets is issued to a different person (one of whom is the same daughter for whom Plaintiff was charged on July 16, 2019): five of the tickets are for flights on December 20, 2019, and two of the tickets are for flights on January 10, 2020.

The Court held another hearing on September 18, 2020—at which Defendant did not appear—to discuss the amended motion and supporting documentation. When asked about the four unrefunded tickets charged on July 16, 2019, Plaintiff did not clarify whether those were

improperly charged by Defendant.  He stated that he was hoping Defendant would appear at the conference "to explain in detail whether they actually snuck back in some of the returns" and that "this might have been a mistake" because this was "a gray area."  Tr. at 3:4-20.  When asked why Plaintiff was seeking damages as to the seven tickets charged on July 17, 2019, Plaintiff responded that "it was confusing as to which one they were . . . ultimately billing us and the one that they . . . admitted to have returned.  So every time we have called [Defendant], . . . there was always a confusion."  *Id.* at 4:11-15.  Plaintiff said that he "put all those things there hoping that [Defendant] will, you know, clarify which ones that they actually charged because they . . . confused us."  *Id.* at 5:14-18.  He explained that when Defendant refunds an item, "they don't refund everything at the same time" and "it becomes very confusing," but that "we do know . . . for a fact that the one for [my daughter] was billed multiple times."  *Id.* at 5:22-6.

This opinion follows.

## LEGAL STANDARD

Plaintiff has established personal jurisdiction as Plaintiff alleges Defendant American Express's principal place of business is in New York.  Compl. ¶ 1.  The Court has subject matter jurisdiction under the FCBA, which amended the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, in 1974.

Whether entry of default judgment under Fed. R. Civ. P. 55 "is appropriate depends upon whether the allegations against the defaulting party are well-pleaded."  *Broach v. Metro. Exposition Servs., Inc.*, 2020 WL 3892509, at *4 (S.D.N.Y. July 10, 2020).  "Because a party in default does not admit conclusions of law, 'a district court need not agree that the alleged facts constitute a valid cause of action.'"  *Id.* (quoting *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 137 (2d Cir. 2011)).  Therefore, this Court is "required to determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law."

*Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Fed. R. Civ. P. 55(c), which requires a court to "weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party."  *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013).

At the same time, it is "well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants."  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  The Second Circuit has held that *pro se* submissions "must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  As such, courts must grant unrepresented parties "extra leeway in meeting the procedural rules governing litigation."  *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (noting that a *pro se* litigant's rights "should not be impaired by harsh application of technical rules").  Still, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Boddie v. New York State Div. of Parole*, 285 F. Supp. 2d 421, 426 (S.D.N.Y.2003) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

The factual allegations of the Complaint and evidence submitted in connection with Plaintiff's motions for default judgment establish a violation of the FCBA but do not establish claims for breach of contract and fraud.

### 1. Fair Credit Billing Act

The Court liberally construes Plaintiff's allegations that Defendant American Express failed to "refund" disputed charges as arising under the FCBA.  The FCBA is described in

4

*Abergel v. Santander Bank*, 2019 WL 4141668, at *2 (S.D.N.Y. Aug. 30, 2019):

> The FCBA amended the TILA to establish a procedure for settling disputed charges on credit accounts. It applies to "open-end credit," such as a such as a credit card or a revolving charge account that is "primarily for personal, family, household, or agricultural purposes." Consumers must notify the creditor of billing errors within sixty days of the creditor's transmission of the statement containing the alleged error.

15 U.S.C. § 1666(a).

To "notify the creditor," the consumer must: "(1) set out details of his name and account; (2) indicate his belief that the statement contains a billing error and the amount of the alleged billing error; and (3) set out his reasons for believing that there has been a billing error." 2019 WL 4141668, at *2 n.4; *see* 15 U.S.C. § 1666(a)(1)-(3). The creditor must "send a written acknowledgment within thirty days," and the creditor has two complete billing cycles, or a maximum of ninety days to resolve the dispute. 2019 WL 4141668, at *2; *see* 15 U.S.C. § 1666(a)(A)-(B). To resolve a dispute, a creditor can either:

> (i) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or
>
> (ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. In the case of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.

15 U.S.C. § 1666(a)(B).

Here, Plaintiff alleges that there were 20 airline tickets incorrectly charged to his account

5

and that he notified Defendant of these charges, which is reflected as the "billing inquiry" in his billing statement. He further alleges that he did not hear from Defendant about the results of that inquiry and he has not been refunded. Construing the Complaint liberally, these allegations are sufficient to plead a violation of the FCBA for the 20 airline tickets charged in his daughter's name for $1,808.65 each.

However, the remaining allegations—as to the four unrefunded tickets charged on July 16, 2019 for $1,808.65 each, and the seven tickets charged on July 17, 2019—are insufficient to plead a violation of the FCBA. A "creditor's duty to resolve the dispute is not triggered unless the consumer notifies the creditor in writing of the amount of the billing error and reasons for believing that it is an error." *Abergel*, 2019 WL 4141668, at *2; *see* 15 U.S.C. § 1666(a). Plaintiff's Complaint and motion papers state that he generally complained to Defendant about these ticket charges, but his papers do not indicate that he notified Defendant in writing, or that he specifically complained about those 11 tickets.

### 2. Breach of Contract and Breach of Fiduciary Duty

Plaintiff's allegations fail to state a claim for breach of contract. To adequately plead a breach of contract claim under New York law, Plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Dukes v. N.Y.C. Emps.' Ret. Sys.*, 361 F. Supp. 3d 358, 370-71 (S.D.N.Y. 2019) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). Plaintiff has not pleaded the existence of a contract or identified the contractual language allegedly breached within said contract.

Alternatively, Plaintiff's claim sounds in breach of fiduciary duty rather than breach of contract. The claim alleges that Defendant owed Plaintiff a duty of care to prepare an accurate billing and that it breached that duty of care both by not correcting its billing errors through its

failure to refund the tickets and by causing him more billing errors by charging Plaintiff for an additional 20 tickets. Compl. ¶¶ 15-16. The Court liberally construes that claim as a breach of fiduciary duty of care.

To establish a breach of fiduciary duty under New York law, a plaintiff must prove "the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendant's misconduct." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008). A "fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Oddo Asset Mgmt. v. Barclays Bank PLC*, 973 N.E.2d 735, 740 (2012) (citation omitted). A fiduciary relationship is "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." *Id.* (citation omitted). Accordingly, "when parties deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Pan Am. Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 511 (S.D.N.Y. 1994); *see also SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 65 (1st Dep't 2004) (affirming dismissal of breach of fiduciary duty claim because "the parties merely had an arm's length business relationship"). For example, there is generally no fiduciary relationship between a debtor and a creditor, bank and borrower, or broker and customer, absent allegations about the interactions between the parties that suggests a special relationship of confidence and trust so as to impose a duty. *See Oddo Asset Mgmt.*, 793 N.E.2d at 741; *Pan Am. Corp.*, 175 B.R. at 511; *DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 WL 224605, at *28-29 (S.D.N.Y. July 27, 2009).

Plaintiff has not adequately alleged that his relationship with American Express was

anything other than an arm's length relationship. The mere fact that Plaintiff had been an American Express cardholder for over 35 years does not create a relationship of trust or confidence, and Plaintiff has not submitted evidence that his relationship with American Express would otherwise constitute extraordinary circumstances so as to create a duty. To the extent that Plaintiff's allegations can be liberally construed as seeking relief for breach of fiduciary duty, that relief is denied.

### 3. Fraud

Plaintiff has also not adequately pleaded fraud. To plead fraud under New York law, a plaintiff must demonstrate: " (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." It requires that a complaint "specify the time, place, speaker, and content of the alleged misrepresentations. In addition, the complaint should explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (internal quotation marks and citations omitted).

Plaintiff has not demonstrated—or even alleged—that Defendant knew that the charges on his billing statement were false because Plaintiff has not described with particularity, or submitted evidence of, conversations with Defendant or correspondence with Defendant that would suggest Defendant's knowledge of such falsity. Plaintiff has only alleged that Defendant was investigating the billing error and failed to tell Plaintiff the outcome of that investigation or

8

to otherwise resolve the dispute. That omission by itself does not meet the pleading requirements under Fed. R. Civ. P. 9(b).

### 4. Damages

In evaluating the damages in a default case, "[w]here a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012).

The Court grants damages in the amount of $36,173.00 to Plaintiff. That amount represents the 20 identical tickets charged on July 16, 2019 at $1,808.65 each, and which were part of the investigation that Plaintiff initiated with Defendant American Express and that he alleges was never resolved. That amount does not include damages for the four unrefunded tickets charged on July 16, 2019 or the seven tickets charged on July 17, 2019. The Court does not award punitive damages, which are generally reserved for situations "where a wrongful motive exists, or where there was willful and intentional misdoing, or reckless indifference," which Plaintiff has not demonstrated exists here. *Miller v. European Am. Bank*, 921 F. Supp. 1162, 1167 (S.D.N.Y. Apr. 15, 1996); *see also Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 77 (2d Cir. 1986).

### 5. Amendment

Courts will generally afford a *pro se* plaintiff an opportunity to amend or be heard before dismissal of claims. *See Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 795 (2d Cir. 1999). Because it is possible Plaintiff will be able to plead allegations for the remaining tickets with respect to his FCBA claim, Plaintiff is granted leave to amend his motion for default judgment to include evidence that is sufficient to meet the standards set forth above.

Specifically, if Plaintiff intends to seek damages for the four unrefunded tickets charged

9

on July 16, 2019 and/or the seven tickets charged on July 17, 2019, he was required under the FCBA to notify American Express about those charges "in writing of the amount of the billing error and reasons for believing that it is an error" and "within sixty days" of American Express' "transmission of the statement containing the alleged error." 15 U.S.C. § 1666(a). If he made such written notification, and American Express failed to respond, Plaintiff may be able to obtain relief under the FCBA.

Plaintiff shall file an amended motion for default judgment with that documentary evidence by November 30, 2020. If Plaintiff does not file an amended motion, the Court will assume that he seeks judgment only with respect to the 20 tickets and does not seek relief for the four unrefunded tickets charged on July 16, 2019 and the seven tickets charged on July 17, 2019.

## CONCLUSION

For the reasons discussed above, the Court enters judgment for Plaintiff and against Defendant in the amount of $36,173.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close Dkt. Nos. 12, 14.

SO ORDERED.

Dated: October 19, 2020
New York, New York

LEWIS J. LIMAN
United States District Judge